OPINION
{¶ 1} This appeal arises from an Allen County Common Pleas Court decision finding Defendant-Appellee, John Calobrisi, in contempt of court for failing to transfer stock accounts to Plaintiff-Appellant, Cynthia Calobrisi, pursuant to the parties' divorce decree. On appeal, Cynthia claims that the trial court's valuation of the accounts was erroneous and that the court erred in failing to award her more than the statutorily imposed attorney fees. However, we find the trial court did not err in valuing the stock accounts as of the time of the parties' divorce considering the value at a later date would have been speculative; notwithstanding, the court's failure to include one account in its valuation constituted reversible error. Additionally, because Cynthia failed to request attorney's fees and failed to present evidence on the issue, the trial court did not err in limiting the fee award to the amount imposed by the local court rules. Accordingly, we reverse the trial court's decision in part and affirm it in part.
 {¶ 2} Facts and procedural posture pertinent to the issues raised on appeal are as follows. During the parties' marriage, John invested marital funds in the stock market. Evidence indicates that some stocks were bought on margin, and that the parties maintained a portfolio of stocks from various companies. Eventually, a stockbroker who was managing the portfolio was given full discretion concerning transactions, and stocks were bought and sold on a continual basis. The portfolio followed the broker to several different brokerage firms, resulting in an account at Adolf Komorsky Investments ("Komorsky") at the time of the parties' divorce. At that time, there is also evidence that the parties owned an additional stock account with GKN Securities, Corporation ("GKN"). At all times, John maintained control over the parties' investments, but the stock activities were not concealed from Cynthia.
 {¶ 3} In May 1998, Cynthia filed a complaint for divorce. According to the parties' April 30, 1999 divorce decree, all stock holdings and investments were to be divided equally between them. Evidence supports that documentation relating to the parties' stock holdings were given to Cynthia's previous attorney; however, no stock certificates were transferred, and John admits to engaging in a myriad of post-divorce stock transactions.
 {¶ 4} In response to John's failure to transfer her share of the investment property, Cynthia filed a motion to compel his compliance with the divorce decree on December 21, 2000. The trial court then entered, sua sponte, an order for John's appearance to show cause why he should not be held in contempt for failing to transfer the assets as previously ordered. A hearing on the matter was held before the magistrate on June 21, 2001. The magistrate recommended that John be found in contempt and that based upon the evidence presented, Cynthia was entitled to half the value of the stock account as it existed at the time of the parties' divorce plus ten percent interest per annum for John's unauthorized post-divorce use of said funds, subject to an offset for funds in a bank account still owed to John from Cynthia.
 {¶ 5} In her objections to the magistrate's recommendation, Cynthia argued that she was entitled to half the sale price in each post-divorce stock exchange and to the tax advantages of any loss acquired in these transactions. While the trial court did hold John in contempt, it overruled Cynthia's objections, finding that the evidence did not provide sufficient basis to recalculate the numerous transactions and trace the movement of funds. Accordingly, the court reduced the Komorsky portfolio to a monetary value, as it existed at the time of the parties' divorce, and ordered John to remit half of the amount to Cynthia for her portion of the property plus ten percent interest per annum from the date of divorce, subject to the aforementioned offset. John was further ordered to pay $250 in attorney's fees pursuant to the local court rules.
 {¶ 6} From this decision, Cynthia appeals, asserting three assignments of error for our review. Because the resolution of the first and second assignments are interrelated, we will discuss them together.
 Assignment of Error I {¶ 7} "The trial court's valuation of the parties' marital account was against the manifest weight of the evidence and constituted an abuse of discretion."
 Assignment of Error II {¶ 8} "The trial court abused its discretion in failing to consider the tax consequences of Mr. Calobrisi's failure to transfer one half of the parties' marital stock account."
 {¶ 9} A trial court has broad discretion in fashioning property divisions in domestic cases, and such determinations will be upheld absent an abuse of discretion.[1] Thus, as long as the distribution ordered by the court is not unreasonable, arbitrary, or unconscionable, the court acts within its discretion.[2]
 {¶ 10} Cynthia contends that the trial court abused its discretion both by failing to trace the numerous post-divorce transactions to arrive at a value and in limiting the value of the parties' stocks to the Komorsky account. In addition, she claims that the trial court erred in failing to attribute half the tax benefits of John's post-divorce financial transactions to her.
 {¶ 11} A determination of fund traceability is a finding of fact.[3] A factual finding of the trial court will be reversed only if it is found to be against the manifest weight of the evidence.[4]
Judgments supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence.[5]
Furthermore, "[t]ax consequences of property divisions may be proper considerations for the court, so long as those consequences are not speculative."[6] If the tax consequences are speculative, a court need not consider them.[7]
 {¶ 12} Cynthia concedes that gaps exist in the post-divorce traceability of the parties' investment property but attempts to raise an inference that this resulted from John receiving cash from the sale of stocks and not reinvesting the full amount. However, the evidence also supports that the gains were possibly utilized to equalize the losses, including losses from stocks bought on margin. John testified that he never received a cash return on any sales; the funds were frequently transferred from one brokerage house to another; the stocks in the portfolio were continually traded; and he occasionally deposited additional monies to support ongoing trades. Accordingly, because gaps exist in tracing the stock account funds after the parties' divorce, the trial court did not err in finding a post-divorce valuation to be speculative.
 {¶ 13} In Ohio, generally marital property is valued for purposes of distribution as of the date of the final divorce hearing.[8] Because of the speculative nature of any post-divorce value that could possibly be placed on the stock accounts, the trial court determined that the only equitable solution was to value the stock at the time of the parties' divorce. At that time, the evidence clearly shows that the Komorsky account was worth $10,533, of which the trial court attributed half to Cynthia. Moreover, the trial court awarded ten percent interest per annum on that amount to eliminate the financial repercussions of Michael's post-divorce decisions. Based upon the evidence provided, we find no abuse of discretion in the trial court's decision by valuing the Komorsky account and the interest associated therewith.
 {¶ 14} We do find, however, that the trial court erred in not considering the evidence also supported that the parties maintained a second stock account with GKN at the time of their divorce. Records from GKN indicate the value of that account was $374.44. Accordingly, Cynthia should have also been awarded half of the value of that account plus the appropriate interest. Consequently, in this respect, the trial court abused its discretion by failing to consider this additional account.
 {¶ 15} With regards to Cynthia's contention about the tax benefits on the post-divorce losses from the investments, the parties stipulated as to what the tax benefit value of the losses would be had Cynthia claimed them on her tax returns. However, the evidence does not indicate what the actual return amount would be when taken in conjunction with the applicable gains associated to the accounts. In this regard, any valuation of the tax benefits would be speculative. Additionally, because the trial court properly determined that the stocks would be valued as of the parties divorce, Cynthia would only receive a tax benefit on losses for stocks sold prior to April 30, 1999. Prior to 1999, the parties filed joint income tax returns, thus Cynthia would have already received any tax benefit associated with the parties' investment property. Moreover, according to the evidence submitted, no stock was sold in 1999, until after the final divorce decree.
 {¶ 16} Accordingly, Cynthia's first assignment of error is sustained insofar as it relates to the GKN account. In all other respects, her first and second assignments are overruled.
 Assignment of Error III {¶ 17} "The trial court erred in failing to hold a hearing as to post-divorce attorney fees as requested. And in awarding Ms. Weaver [formerly Calobrisi] only $250.00 in post-divorce attorney fees in light of Mr. Calobrisi's unwarranted failure to transfer one half of the parties' marital stock account and his demonstrated unauthorized use of said funds."
 {¶ 18} As one condition to suspend Mr. Calobrisi's jail sentence for contempt, the trial court ordered him to pay Cynthia's reasonable attorney's fees of $250, as provided by the local rules of the court. In her third assignment of error, Cynthia maintains that the trial court abused its discretion by failing to hold an evidentiary hearing to determine the amount of attorney fees awarded.
 {¶ 19} The resolution of a request for attorney fees is vested in the sound discretion of the trial court and will not be overturned upon review absent a showing of an abuse of discretion.[9] The record herein shows that at no point, other than in her original complaint for divorce, did Cynthia request attorney fees. Additionally, Cynthia neither presented evidence at the contempt hearing nor moved the court for a hearing for the purpose of establishing an award in excess of the amount provided by the local rules. In order to prove an entitlement to such fees, Cynthia was required not only to establish the time spent and hourly rate but also the reasonableness of both.[10] Accordingly, Cynthia's third assignment of error is overruled.
 {¶ 20} Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed insofar as it relates to the failure to include the GKN account in calculating the value of the parties' investment property, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
 BRYANT and HADLEY, J.J., concur.
[1] Tucker v. Tucker (Nov. 27, 2001), Allen App. No. 1-01-78, 2001-Ohio-2319, citing Middendorf v. Middendorf (1998), 82 Ohio St.3d 397,402.
[2] Lust v. Lust (July 17, 2002), Wyandot App. No. 16-02-04, 2002-Ohio-3629, at ¶ 25.
[3] Sanor v. Sanor (Sept. 25, 2002), Columbiana App. No. 2001 CO 37, 2002-Ohio-5248, at ¶ 53, citing James v. James (1995),101 Ohio App.3d 668.
[4] Id.
[5] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
[6] Fisher v. Fisher (Mar. 22, 2002), Henry App. No. 7-01-12, 2002-Ohio-1297, citing Day v. Day (1988), 40 Ohio App.3d 155, 159.
[7] Id., citing Fergus v. Fergus (1997), 117 Ohio App.3d 432.
[8] Lust, supra, at ¶ 28.
[9] Wyatt v. Trimble Tp. Waste Water Treatment Dist. (Nov. 3, 1992), Athens App. No. 1251, citing State ex rel. Gravill v. Fuerst (1986),24 Ohio St.3d 12, 13-14.
[10] Donahue v. Silberstein (Oct. 16, 1990), Franklin App. No. 90AP-588. See, also, Vandeventer v. Vandeventer (1999),132 Ohio App.3d 762, 770.